UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMZAN ALI CHAUDHRY, | No. 2:19-cv-00682-TLN-DMC |
| Petitioner, | |
| v. | **ORDER** |
| WILLIAM P. BARR, et al., | |
| Respondents. | |

Presently before the Court is Petitioner Ramzan Ali Chaudhry's ("Petitioner") Motion for Preliminary Injunction Staying the Government from Deporting Petitioner. (ECF No. 3.) Based on the posture of this case, however, it appears Petitioner is actually seeking a temporary restraining order ("TRO") pending further briefing on a preliminary injunction (*see, e.g.*, ECF No. 3-12 at 2), and so the Court construes the present motion as such.[1] For the reasons set forth below, Petitioner's Motion for TRO is GRANTED.

I. BACKGROUND[2]

Petitioner is a native and citizen of Pakistan who has lived in the United States for almost 30 years. He is married to a U.S. citizen, and together they have three U.S.-born children. In

---

[1] Of course, as the parties and the Court are aware, the standard is the same for a TRO and preliminary injunction, but a TRO would be issued on a much shorter timeline and possibly without the benefit of a responsive brief from the opposing party, as is the case here.

[2] The following recitation of facts is taken from Petitioner's Motion, ECF No. 3, unless otherwise noted.

1

1998, what is now known as the Department of Homeland Security issued to Petitioner a Notice to Appear charging him with removal. Petitioner conceded removability, but applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In 2012, an immigration judge denied his application and ordered Petitioner removed. Petitioner unsuccessfully appealed that decision to the Board of Immigration Appeals ("BIA") and subsequently the Ninth Circuit. In February 2018, Petitioner was arrested and detained at the Yuba County Detention Center, where he presently awaits deportation.

On February 12, 2019, Petitioner filed a motion to reopen with the BIA based on changed country conditions. Therein, Petitioner claims that he fears being the victim of an honor killing if he returns to Pakistan. He also filed an emergency motion for stay of deportation, which was denied on March 26, 2019. While the BIA denied Petitioner's request for stay, it has not yet ruled on his motion to reopen.

Meanwhile, on February 20, 2019, Petitioner filed a Petition for Writ of Habeas Corpus in this District, Case No. 19-cv-00327-JAM-GGH, apparently challenging his final removal order. (*See* Case No. 19-cv-00327, ECF Nos. 1 (Petition) and 6 (Findings and Recommendations).) The magistrate judge assigned to the case issued Findings and Recommendations on February 26, 2019, recommending that the petition be dismissed for lack of jurisdiction. (ECF No. 6.) The Court adopted those findings on April 17, 2019, and the case was closed. (ECF No. 8-9.)

Petitioner thereafter filed a second Petition for Writ of Habeas Corpus with this Court on April 22, 2019 (ECF No. 1), and filed the pending Motion for Preliminary Injunction (ECF No. 3), which the Court herein construes as a motion for TRO, on April 23, 2019.[3]

II.    STANDARD

A temporary restraining order is an extraordinary remedy. The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. In general, "[t]emporary restraining orders are governed by the same standard applicable to

---

[3] This second petition differs slightly from the first in that Petitioner here alleges due process violations and seeks only an injunction staying his removal pending a decision from the BIA on his motion to reopen. (*See* ECF No. 1, Counts 1-2.) By contrast, the February 20, 2019 Petition seems to also alleged unlawful detention and explicitly sought review of the operative removal order. (*See* Case No. 19-cv-00327, ECF No. 1, Counts 1-3.)

2

preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); see also L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (*citing Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

In addition, under Local Rule 231, "[i]n considering a motion for temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by

3

motion for temporary restraining order." L.R. 231(b).

III. ANALYSIS

    a. Jurisdiction

Before considering the merits of Petitioner's motion for TRO, the Court must first determine whether it has jurisdiction over this matter. Petitioner asserts that 8 U.S.C. § 1252 does not divest this Court of jurisdiction to hear his Petition for Writ of Habeas Corpus, and that any application of section 1252 that would divest the Court of jurisdiction would amount to an unconstitutional suspension of the writ of habeas corpus. The Court agrees.

1. 8 U.S.C. § 1252(a)(5), (b)(9), (d)(1), and (g)

Under section 1252(a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ." And pursuant to subsection (b)(9), "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this subsection." While this language would appear to divest the district court of jurisdiction, the Ninth Circuit has held that these "jurisdiction-stripping provisions do[] not apply if the claim is *not a direct challenge to an order of removal*." *Singh v. Gonzales* (*Amarjeet Singh*), 499 F.3d 969, 978 (9th Cir. 2007) (emphasis in original); *quoted by Sied v. Nielsen*, Case No. 17-cv-06785-LB, 2018 WL 1142202, at *11 (N.D. Cal. 2018); *see also Gbotoe v. Jennings*, No. C 17-06819 WHA, 2017 WL 6039713, at *3 (N.D. Cal. 2017). "In sum, if a habeas petition is not a direct challenge to an order of removal, nothing in Section 1252(a)(5) or (b)(9) prevents a district court from exercising jurisdiction to hear the petition." *Sied*, 2018 WL 1142202, at *12. More specifically, the Ninth Circuit—and many district court cases that follow—have held that a habeas petition is not a direct challenge to a removal order where the petition requests a stay of removal pending hearing on a motion to reopen based on changed country conditions. *Id.* at 13-20 (discussing cases, noting potential conflict in district court cases, and concluding that Ninth Circuit precedent controls).[4]

That is precisely the situation we have here: Petitioner has filed a motion to reopen with

---

[4] Section 1252(d)(1) likewise only addresses review of a final order of removal. *See id.* at 20.

4

the BIA based on changed country conditions. Because a motion to reopen alone does not stay removal proceedings, and because the BIA denied his emergency stay request, he fears that he will be removed before his motion to reopen is properly heard. Mr. Chaudry's habeas petition therefore seeks a stay of removal so that he can be heard on his pending motion to reopen before the BIA. If granted, Mr. Chaudry's removal order will not be vacated; rather, he will be given his "day in court" to have his motion to reopen heard by the BIA. Consequently, because his habeas petition is not a direct challenge to a removal order, sections 1252(a)(5) and (b)(9) do not divest this Court of habeas jurisdiction.

Similarly, section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." "The Ninth Circuit has held consistently that Section 1252(g) should be interpreted narrowly." *Sied*, 2018 WL 1142202, at *21 (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)). Indeed, the purpose of subsection (g) is to allow for prosecutorial discretion. *Id.* As a result, subsection (g) "does not prevent [a] district court from exercising jurisdiction over . . . due process claims [that] do not arise from a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien, but instead constitute general collateral challenges to unconstitutional practices and policies used by the agency." *Id.* (citing *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1118 (9th Cir. 2001)) (internal quotation marks omitted).

Again, like in *Sied*, Petitioner here challenges the inability to be heard on his motion to reopen as a due process violation. That due process claim does not arise from a decision of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders, and so there is no challenge to prosecutorial discretion present here. Section 1252(g) does not divest this Court of jurisdiction.

### 2. The Suspension Clause

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require

5

it." U.S. Const. art. I, § 9, cl. 2.  Petitioner argues that to interpret the provisions discussed above in a way that divests this Court of jurisdiction over his habeas petition would violate the suspension clause.  The Court again agrees.

Generally, the Suspension Clause is not violated if there is a substitute remedy that is neither inadequate nor ineffective to test the legality of an individual's detention, such as through the courts of appeals.  *See, e.g.*, *Singh v. Mukasey*, 533 F.3d 1103, 1106 (9th Cir. 2008); *Sied*, 2018 WL 1142202, at *22.  The motion to reopen process may indeed be an adequate substitute, but courts are required to look at the process as applied to the individual to determine whether that substitute process is adequate as applied to the individual in question.  *See, e.g.*, *Sied*, 2018 WL 1142202, at *22.  Under the facts presented, the Court finds the motion to reopen to be an inadequate substitute here.  Specifically, Petitioner filed for an emergency stay of deportation with the BIA pending determination of his motion to reopen.  The BIA denied the stay request without ruling on his motion to reopen.  As a result, Petitioner is subject to removal at any time, even before the BIA makes a determination on his motion to reopen.  Once he is deported, it will be difficult if not impossible for Mr. Chaudry to pursue his motion from abroad.  Indeed, if his allegations are true, he may be killed if he returns to Pakistan.  That scenario does not equate to an adequate substitute for habeas relief because Petitioner may be deprived of his opportunity to be heard if he is deported.

Other courts have found a motion to reopen to be an inadequate substitute under very similar circumstances.  *See id.* at *22-25 (discussing additional similar cases).  In short, courts have found that "[t]he motion-to-reopen process is a facially adequate substitute for habeas when it does not deprive an alien of his opportunity to be heard.  It is not a constitutionally adequate substitute process in the facts of this case, where the government can manipulate the process by deporting [the petitioner] before he can be heard, to a country where he may be tortured or killed."  *Id.* at 25.  That is the case here, and so this Court finds the same.

    b. <u>Temporary Restraining Order</u>

As for the merits of Petitioner's request for TRO, the Court finds that each of the four *Winters* factors set forth above are met here.  First, Petitioner has raised serious questions on the

merits of his habeas petition based on his position that the government is depriving him of his due process right to be heard on his pending motion to reopen. 8 U.S.C. § 1229a(c)(7) codifies the right of an alien to file a motion to reopen. 8 U.S.C. § 1231(b)(3) restricts removal to a country where the alien's life or freedom would be threatened due to the alien's race, religion, nationality, social associations, or political group. The Court lacks jurisdiction over the ultimate question of Petitioner's removability and therefore makes no ruling in that regard here. However, to the extent Petitioner argues that his due process right is at stake because he may be removed to a country where he faces threat of death by an honor killing, the Court finds Mr. Chaudry has raised serious questions that he will be deprived of a meaningful opportunity to be heard on his motion to reopen if he is removed to Pakistan before that motion is heard. *See Sied*, 2018 WL 1142202, at *26; *Devitri v. Cronen*, 289 F.Supp.3d 287, 295 (D. Mass. 2018) (discussing liberty or property interest as a prerequisite to a due process claim, and the right to a pre-deprivation hearing).

Second, Mr. Chaudry has adequately shown that he is likely to suffer irreparable harm in the absence of a TRO. Specifically, "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (internal quotation marks omitted)). And as indicated above, Petitioner claims he is in fear for his life if he is removed from the United States to Pakistan. Death would also certainly constitute irreparable harm.

Third, the balance of equities tips sharply in Petitioner's favor. While the United States may incur additional cost in further detainment of Mr. Chaudry, Petitioner would possibly face removal without the ability to exercise his right to be heard on the motion to reopen.

Finally, the Court finds that at this stage a stay of Petitioner's removal is in the public interest. While there is a "public interest in prompt execution of removal orders," there is also "a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Sied*, 2018 WL 1142202, at *27 (internal quotation marks and citations omitted); *see also Gbotoe*, 2017 WL 6039713, at *5. Moreover, because the "prompt execution" of Mr. Chaudry's removal may pose due process concerns, the Court finds the public interest is better served by temporarily staying that execution to ensure all

constitutional safeguards are met.[5]

IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion for Preliminary Injunction, construed as a Motion for Temporary Restraining Order (ECF No. 3) is GRANTED. Respondents William Barr, United States Attorney General, in his official capacity; Kevin Mcaleenan, Acting Secretary of Homeland Security, in his official capacity; David Jennings, Director of U.S. Immigration & Custom Enforcement San Francisco, California, in his official capacity; Wendell Anderson, Sheriff Yuba County Jail, Marysville, California, in his official capacity; and all persons acting under their direction, are enjoined from implementing or enforcing the removal of Petitioner from the United States. The TRO shall remain in place pending briefing and disposition of Petitioner's Motion for Preliminary Injunction, or until further order of this Court.

Respondents are ordered to show cause in writing not later than May 20, 2019, as to why Petitioner's Motion for Preliminary Injunction should not be granted pending disposition of his motion to reopen before the BIA. Petitioner may file a reply not later than May 27, 2019.

IT IS SO ORDERED.

Dated: May 7, 2019

Troy L. Nunley
United States District Judge

---

[5] Of course, the Court draws this conclusion without the benefit of a responsive brief from the government. Additional briefing on this and all other issues present in Petitioner's request for preliminary injunction may prove helpful.

8