1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    RAMZAN ALI CHAUDHRY,                    No.  2:19-CV-0682-TLN-DMC-P

12                     Petitioner,

13         v.                                  FINDINGS AND RECOMMENDATIONS

14    WILLIAM P. BARR, et al.,

15                     Respondent.

16

17                 Petitioner, Ramzan Ali Chaudhry, proceeding with retained counsel, brings this

18    petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Pending before this Court is

19    Respondents' motion to dismiss and response to order to show cause (ECF No. 7).

20

21         I.      **Background[1]**

22                 Petitioner is a 43-year old native and citizen of Pakistan who has lived in the

23    United States for almost 30 years.  He is married to a U.S. Citizen, and together they have three

24    U.S.-born children.  On August 7, 1998, what is now the Department of Homeland Security

25    issued a Notice to Appear—charging Petitioner with removal. Petitioner conceded removability

26    and applied for asylum, withholding of removal, and relief under the Convention Against Torture

27    _____

28    [1] The following facts are taken from Chaudhry's Petition for a Writ of Habeas Corpus, ECF No.
      1, unless otherwise noted.

("CAT"). On January 5, 2012, following an evidentiary hearing, an Immigration Judge ("IJ")

denied Petitioner's application for asylum, withholding of removal, and CAT claim, and ordered

Petitioner removed. Petitioner appealed the IJ's decision to the Board of Immigration Appeals

("BIA"). The BIA dismissed the appeal on May 23, 2014. Petitioner appealed the BIA's

decision and on August 25, 2017, the Ninth Circuit denied the Petition for review. ECF No. 14-1

at 1-9.

On February 19, 2019, Petitioner was arrested by Immigration and Customs

Enforcement ("ICE") and transferred to Yuba County Detention Center. On February 19, 2019,

Petitioner filed a motion to reopen with the BIA based on changed country conditions. Petitioner

claims he fears being the victim of an honor killing if returned to Pakistan. Petitioner also filed

an emergency motion for stay of deportation with the BIA, which was denied on March 26, 2019.

Though the BIA denied Petitioner's stay motion, the BIA has not yet ruled on his motion to

reopen. On March 26, 2019, Petitioner filed a Petition for review of the BIA's denial of the

motion to stay in the U.S. Court of Appeals for the Ninth Circuit. See Case No. 19-70722 ECF

No. 1. On April 22, 2019, the Ninth Circuit dismissed the appeal because the denial of a stay is

not a final order of removal. See Id. at ECF No. 8.

On February 20, 2019, Petitioner filed a Petition for a Writ of Habeas Corpus in

this District, Case No. 19-cv-00327-JAM-GGH, seemingly challenging the merits of his final

removal. See Case No. 19-cv00327, ECF Nos 1 and 6. The magistrate judge assigned to the case

issued Findings and Recommendations on February 26, 2019, recommending that the petition be

dismissed for lack of jurisdiction. Id. at ECF No. 6. The Court adopted those findings on April

17, 2019, and the case was closed. Id. at ECF No 8-9.

Petitioner thereafter filed a second Petition for a Writ of Habeas Corpus with this

Court on April 22, 2019, and a motion for Preliminary Injunction on April 23, 2019. ECF Nos. 1

and 3. On May 7, 2019, this Court construed Petitioner's motion for Preliminary injunction as a

motion for a temporary restraining order ("TRO") and so construed, granted the motion, ordering

the government to show cause why Petitioner's Preliminary Injunction should not be granted.

ECF No. 5. On May 20, 2019, Respondent filed a motion to dismiss for mootness; response to

order to show cause.  ECF No. 7.  In this motion Respondent informed the Court Petitioner was

removed to Pakistan on April 23, 2019.  Id.  Petitioner filed his opposition to the motion to

dismiss on May 27, 2019, and Respondent filed their reply on July 10, 2019.  ECF Nos. 9 and 10.

On July 10, 2019, this Court ordered Petitioner to file a status report, which

Petitioner filed on July 11, 2019.  ECF Nos. 10 and 11.  The status report indicates Petitioner is

alive but in hiding in a hotel in Karachi, Pakistan, surviving on money sent from his family in the

U.S.  ECF No. 11.  Subsequently, this Court ordered additional briefing from the parties on

subject matter jurisdiction and whether Petitioner's deportation rendered this case moot and held

a hearing on Respondent's motion to dismiss on July 19, 2019.  ECF No. 12 and 15.  Respondent

raises two main arguments in their motion to dismiss— (1) this Court lacks subject matter

jurisdiction and (2) the petition for a writ of habeas corpus is moot.


**II.       Subject Matter Jurisdiction**

This case presents a complex jurisdictional question related to the relationship

between habeas corpus and immigration law.  The jurisdictional question here is also highly

specific, relating only to circumstances like the one present here where: (1) an individual has filed

a motion to reopen based on changed country conditions and a motion to stay removal in

immigration court, (2) and the immigration court either denies the motion to stay or fails to rule

on the motion to stay, but the motion to reopen remains pending, (3) and as a result, the individual

faces imminent deportation or is deported, and finally that (4) the individual files a petition for a

writ of habeas corpus in a district court attempting to remedy or prevent the due process violation

created by the imminent or actual deportation.

This Court recognized its jurisdictional authority in its May 7, 2019, order granting

Petitioner's motion for a temporary restraining order ("TRO").  ECF No 5.  Respondent, not

having the benefit of challenging jurisdiction at the TRO stage, now objects to this Court's

jurisdiction in their motion to dismiss.  Both parties have fully briefed the issue and their

arguments are summarized, in general, below.

///

## A. Summary of the Parties Arguments

### 1. Respondent's Argument

Respondent argues this Court lacks subject matter jurisdiction over this habeas claim because Congress has expressly divested federal district courts of jurisdiction to review "any claim 'arising from' the Government's execution of an alien's final order of removal." ECF No. 7 at 4 (citing Section 1252(g)). Respondent argues, Section 1252(g) divests federal district courts of subject matter jurisdiction—relying on the plain language of 1252(g) as support.

Notably, in their motion to dismiss, Respondent does not argue sections 1252(a)(5), (b)(9), or (d)(1) expressly divest federal district courts of jurisdiction, but rather section 1252(g) alone is the jurisdictional stripping provision.[2] Respondent asserts that sections 1252(a)(4), (a)(5), (b)(9), and (d)(1) outline the administrative process for aliens challenging the merits of their immigration cases, but do not, by themselves deprive federal district courts of jurisdiction. Respondent argues the administrative and judicial review procedures created by sections 1252(a)(4), (a)(5), (b)(9), and (d)(1) are the exclusive forms of relief available to an alien and because a petition for a writ of habeas corpus is outside this administrative framework, such a petition is improper. Respondent argues that this would make this Court's exercise of jurisdiction over such a petition similarly improper.

### 2. Petitioner's Argument

Petitioner argues this Court has jurisdiction to rule on the 28 U.S.C. § 2241 habeas petition because Section 1252 (a)(5), (b)(9), and (g) do not deprive this Court of subject matter jurisdiction. Petitioner cites Amarjeet Singh v. Gonzales, 499 F.3d 969 (9th Cir. 2007) for support. Petitioner assets Amrjeet Singh explains that habeas corpus jurisdiction exists where the grounds for petition arose after the entry of the removal order and the only relief sought by the petition was to have a "day in court" at a subsequent proceeding. ECF 1 at 3. Petitioner contends

---

[2] In Respondent's supplemental briefing, however, they state "the Court lacks subject matter jurisdiction pursuant to the Immigration and Nationality Act…which divests this Court and all federal district court (sic.) of jurisdiction to review any action the Government takes to execute a final order of removal." ECF No. 14 at 3-4 (citing §§ 1252(a)(5), (b)(9), and (g)). This creates some ambiguity related to Respondent's argument, but changes nothing in this Court's analysis.

that here the alleged new grounds, in the form of the changed country conditions, arose after the entry of his removal order and the only relief he currently seeks is a reasonable opportunity to exercise his statutory right to file his motion to reopen.  Id.

Further, Petitioner contends that if Section 1252 deprives this Court of habeas jurisdiction in this case and those like it, such a deprivation violates the Suspension Clause of the U.S. Constitution.  Id. Petitioner states that under existing Supreme Court law, the Suspension Clause is not violated if the legality of an individual's detention can be challenged in an alternative form which is both adequate and effective.  ECF No. 1 at 4 (citing INS v. St. Cyr, 533 U.S. 289, 300(2001)).  Here, Petitioner asserts he lacks an adequate and alternative forum to challenge the legality of the Board's denial of his stay request, since denial of the emergency motion to stay is not reviewable by the Ninth Circuit, and without intervention from this Court, Petitioner has no meaningful way to present his motion to reopen before the Board.  Id.

### B.      Legal Framework

This unique jurisdictional issue requires the Court to look at the jurisdictional sections in the INA, and the immigration statutes related to motions to reopen based on changed country conditions and motions to stay removal pending resolution of a motion to reopen based on changed country conditions.

### 1.      Subject Matter Jurisdiction under the INA

The Immigration and Nationality Act ("INA") as amended by the REAL ID Act of 2005, places jurisdictional limits on judicial review of immigration proceedings, including orders of removal. 8 U.S.C. §1252.  There are four relevant previsions limiting judicial review:

> 1. Section 1252(a)(5) states, "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."
>
> 2. Section 1252(b)(9) states, "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States…shall be available only in judicial review of a final order under this section…no court shall have jurisdiction, by habeas corpus under section 2241…or by any other provision of law, to review such an order or such questions of law or fact."

3. Section 1252 (d)(1) states, "A court may review a final order of removal only if— (1) the alien has exhausted all administrative remedies available to the alien as of right."

4. Section 1252(g) states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

Id.

## 2. Right to Reopen Based on Changed Country Conditions

"An alien ordered to leave the country has a statutory right to file a motion to reopen his removal proceedings." Mata v. Lynch, 135 S.Ct. 2150, 2153 (2015) (citing 8 U.S.C. § 1229a(c)(7)(A)). In Kucan v. Holder, 558 U.S. 233 (2010), the Supreme Court noted "[t]he motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." 558 U.S. at 243 (2010) (quoting Dada v. Mukasey, 554 U.S. 1, 18 (2008)). If an alien's motion to reopen is granted, the original order of removal is vacated "as if it never occurred." Bonilla v. Lynch, 840 F.3d 575, 589 (9th Cir. 2016) (citing Nken v. Holder, 556 U.S. 418, 249 n.1 (2009)). As the Northern District of California properly noted in Sied v. Nielsen—an "alien is not removable while his []reopened case is pending and has the opportunity to be heard on the merits of his underlying asylum or withholding-of-removal claim." Sied V. Nielsen, No. 17-6785-LB, 2018 WL 1142202, at *7 (N.D. Cal. Mar. 2, 2018). An alien seeking asylum or withholding of removal based on changed country conditions, as Petitioner is here, has no time limit for filing their statutory motion to reopen. 8 U.S.C. § 1229a(c)(7)(C)(ii).

## 3. No Statutory Right to Stay Removal Pending Resolution of a Motion to Reopen

The INA does not provide an alien with a right to stay removal, while a motion to reopen based on changed country conditions is pending in immigration court. Sied v. Nielsen, No. 17-06785-LB, 2018 WL1142202, * 8-9 (N.D. Cal. Mar. 2, 2018) (noting if the IJ or BIA deny a stay motion but don't rule on the motion to reopen, the alien is in limbo "with no way to prevent deportation no matter how meritorious his underlying motion to reopen.") If the

immigration court denies a motion to reopen, the order denying the motion to reopen is **not** reviewable by the court of appeals. Shaboyan v. Holder, 652 F.3d 988, 990-91 (9th Cir. 2011). This means even if the BIA rules on the motion to stay and denies it, there is no right to appeal the stay denial until the BIA also rules on the motion to reopen.

### 4. There is a gap in the immigration statutory framework giving rise to a due process violation to those affected

Aliens who seek to exercise their statutory right to file a motion to reopen, but who either do not receive a stay of removal (either because the immigration court neglects to rule on it or the immigration court denies the motion to stay removal but not the motion to reopen), will face imminent deportation. This is because there is no statutory right to a stay of removal, and a denial of a stay of removal is not reviewable by a court of appeals. In some cases an alien may be able to present their motion to reopen to an immigration court even if they are removed while their motion is pending[3], but in many cases,[4] including the case at bar, an alien would be unable to meaningfully present their motion.[5] This creates a procedural "gap" in which an alien has a right to file a motion to reopen, but concurrently can be denied the opportunity to meaningfully pursue this statutory right, due to imminent or actual deportation. This gap in the statutory scheme results in the denial of a statutory right without due process of law. See Devitri v. Cronen, 290 F.Supp.3d 86, 92-93 (D. Mass. 2017) ("'The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

///

///

---

[3] See e.g. Coyt v. Holder, 593 F.3d 902 (9th Cir. 2010)(an alien removed to Mexico was able to continue to pursue his motion to reopen after deportation).
[4] See e.g. Sied v. Nielsen, No. 17-CV-06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018), appeal dismissed, No. 18-16128, 2018 WL 6624692 (9th Cir. Sept. 14, 2018) (involving an alien facing removal to Eritrea, where it was uncontested he would not have the opportunity to pursue his motion to dismiss if deported).
[5] It is uncontested in this case that Petitioner is not able to meaningfully pursue his motion to reopen due to his removal.

## C.     Jurisdictional Analysis

Respondent challenges the jurisdiction of the District Court here. Respondent's jurisdictional argument is twofold. First, Respondent focuses on 8 U.S.C. section 1252(g) which Respondent contends divests federal district courts of jurisdiction to review "any claim *'arising from'* the Government's execution of an alien's final order of removal. ECF No. 7 at 4, (emphasis added). Respondent argues Petitioner's habeas petition constitutes a claim *arising from* the Government's execution of an alien's final order of removal, and thus this Court has no jurisdiction over the claim. Second, Respondent argues the only way Petitioner can obtain any form of relief related to his immigration proceedings is through the administrative process outlined in the INA, specifically sections 1252(a)(4), (a)(5), (b)(9), and (d)(1). Id. at 6. Because a petition for a writ of habeas corpus is not within the statutory framework outlined in the INA, Respondent contends that such a petition is improper.

However, both the Supreme Court and the Ninth Circuit have advised that the courts should narrowly construe restrictions on jurisdiction. Montero-Martinez v. Ashcroft, 227 F.3d 1137, 1141 (9th Cir. 2002) (citing Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482-83 (1999). For the reasons discussed below, the Court finds that it has jurisdiction to hear Mr. Chaudhry's case and section 1252(g) does not divest it of jurisdiction.

### 1.     Section 1252(g) does not deprive this Court of jurisdiction over Chaudhry's habeas petition.

Section 1252(g) provides, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Unlike sections 1252(a)(4), (a)(5), (b)(9), and (d)(1), which address judicial review of an underlying removal order, section 1252(g) speaks only to "decision[s] or action[s] by the Attorney General. Compare, 8 U.S.C. §§ 1252(a)(4), (a)(5), (b)(9), and (d)(1) with § 1252(g). For this reason, section 1252(g) has been interpreted to only divest courts of jurisdiction over certain discretionary decision by the Attorney General. Catholic Soc. Servs., Inc. v. INS, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) ("As interpreted by the Supreme Court

in <u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471, 482–83 (1999),

[Section 1252(g)] applies only to the three specific discretionary actions mentioned in its text, not

to all claims relating in any way to deportation proceedings.")

The Supreme Court has held the purpose of 1252(g) is to limit judicial constraints

placed on prosecutorial discretion.  <u>See</u> <u>United States v. Hovsepian</u>, 359 F.3d 114, 1155 (9th Cir.

2004) (en banc) (citing <u>American-Arab Anti-Discrimination Committee</u>, 525 U.S at 485 n. 9).

Further, the Ninth Circuit has consistently held section 1252(g) should be interpreted narrowly.

<u>Id.</u> (citing <u>Barahona-Gomez v. Reno</u>, 236 F.3d 1115, 1120-21 (9th Cir. 2001).  As such, the

Ninth Circuit has held section 1252(g) does not divest courts of jurisdiction over cases that do not

address issues of prosecutorial discretion.  <u>See</u> <u>Barahona-Gomez</u>, 236 F.3d at 1118 (stating

section 1252(g) does not prevent a district court from exercising jurisdiction over due process

claims that do not arise from a decision or action of the Attorney general to (1) commence

proceedings, (2) adjudicate cases, or (3) execute removal orders).  The Northern District of

California, in <u>Sied v. Nielsen</u>, provided three examples where the Ninth Circuit has held district

courts have jurisdiction:

> …[cases] alleg[ing] that the government violated due process by refusing to issue any decisions granting aliens a suspension of deportation, *see Barahona-Gomez*, 236 F.3d at 1117–21, [cases] alleg[ing]  that the government violated due process by refusing to accept aliens' legalization applications, *see Catholic Soc. Servs.*, 232 F.3d at 1144, 1150, [and] [cases] alleg[ing]  that the government violated due process by seizing aliens' green cards and failing to provide them notice that they had to surrender for deportation, *see Sulit v. Schiltgen*, 213 F.3d 449, 452–53 & n.1 (9th Cir. 2000).

<u>Sied v. Nielsen</u>, No. 17-CV-06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2,

2018), <u>appeal dismissed,</u> No. 18-16128, 2018 WL 6624692 (9th Cir. Sept. 14, 2018).

Respondent argues it is clear from the statutory text of section 1252(g) this Court

has no jurisdiction here.  Respondent asserts "[i]f there was any doubt about section 1252's

applicability to habeas claims, Congress clarified in 2005 that section 1252(g)'s reference to

'statutory or nonstatutory' provisions of law 'include[es] section 2241 of Title 28, or any other

habeas corpus provision."  ECF No. 7 at 5 (citing Pub. L. 109-13, Div. B, sect. 106(a)(3) (2005)).

However, Petitioner's claim does not arise from a discretionary decision by the Attorney General. The claim is not a challenge to the commencement of a proceeding, adjudication of a case, or execution of removal orders. Rather, the claim here is a due process violation arising from Petitioner's inability to meaningfully pursue his motion to reopen. This is a quintessential "general collateral challenge[]" to an alleged "unconstitutional practice and policy used by the agency." Barahona-Gomez, 236 F.3d at 1118 (quoting Walters v. Reno, 145 F.3d 1032, 1052 (9th Cir. 1998)).

Respondent simply ignores the due process violation that forms the basis of the habeas petition, arguing instead the habeas petition is a "request for more time to challenge the imminent execution of his removal order, a request which under any linguistic construction "aris[es] from the decision…by the [Secretary] to…execute [Petitioner's] removal order." Respondent's linguistic construction argument is without merit. The habeas petition arose from a due process violation created by Chaudhry's detention and subsequent deportation. What respondent attempts to characterize as a mere request for more time, is in fact a request to vindicate Petitioner's due process rights. By ignoring the glaring due process argument and ongoing due process violation Respondent's position falls in on itself.

Respondent cites two cases in support of their argument, however, both cases are inapposite to the pending petition. Respondent cites Martinez v. Napolitano, hold "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is "inextricably linked" to the order of removal, it is prohibited by section 1252(a)(5)." Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012) (finding a challenge to the BIA's decision that an alien was not eligible for asylum relief under the CAT to be an "indirect attack on his order of removal"). Martinez is nothing like the case presently before the Court. Petitioner, here, is not challenging the procedure or the substance of an agency determination and he certainly is not challenging the BIA's denial of CAT relief. Petitioner's habeas petition is based on the statutory gap in the immigration framework, depriving him of due process by preventing him a meaningful opportunity to be heard on his motion to reopen. For this reason, Martinez is wholly unpersuasive.

1          Respondent then cites <u>Alvarez-Barajas v. Gonzalez</u> which stated, "the language

2   and structure of the [REAL ID] Act…Evidences Congress' clear intention to make circuit courts

3   the 'sole and exclusive means of judicial review' for challenges to removal". <u>Alvarez-Barajas v.

4   Gonzalez</u>, 418 F.3d 1050 (9th Cir. 2005). Critical in the instant case is the fact that the current

5   petition is not challenging the ultimate removal order i.e. the merits of Petitioner's immigration

6   case. The sole basis of the habeas petition is the due process violation created by the denial of his

7   motion to stay and subsequent deportation. Petitioner faced an imminent due process violation at

8   the time his habeas petition was filed and now faces an ongoing due process violation since his

9   removal to Pakistan. Petitioner seeks only to access the BIA to remedy this ongoing due process

10  violation, providing Petitioner such access does not touch the final order of removal or the merits

11  of Petitioner's immigration case. Consequently, <u>Alvarez-Barajas</u> is also unpersuasive.

12         Respondent cites no Supreme Court or Ninth Circuit case holding Section 1252(g)

13  divests a district court of jurisdiction to hear a habeas petition seeking a stay of removal or

14  alleging a due process violation. This is because no such case exists. As such, this Court relies

15  on the legal framework outlined above to find it has jurisdiction to hear Chaudhry's habeas

16  petition. The petition does not challenge a discretionary decision of the Attorney General or seek

17  to challenge his final order of removal. Rather the petition only seeks relief from a due process

18  violation created by a gap in the immigration statutes. Section 1254(g) does not deprive district

19  courts to hear such due process challenges. Thus, this Court is not deprived of subject matter

20  jurisdiction by section 1252(g).

21        **2.**       **Sections 1252(a)(4), (a)(5), (b)(9), and (d)(1) have no effect on
    this Court's ability to address Chaudhry's habeas Petition.**

22

23         Respondent does not argue sections 1252(a)(4), (a)(5), (b)(9), and (d)(1) deprive

24  this Court of jurisdiction. Instead, Respondent argues these sections establish the only

25  administrative process and judicial review available to aliens seeking relief related to their

26  immigration cases. See ECF No. 7 at 6-7. This argument is not persuasive. Sections 1252(a)(4)

27  provides the U.S courts of appeals are the "exclusive means for judicial review of any cause or

28  claim under the United Nations Convention Against Torture." 8 U.S.C. § 1252(g). Here,

1    Petitioner is not challenging his denial of CAT relief, thus section 1252(a)(4) does not apply.

2            Section 1254(a)(5) and (b)(9) apply only to direct challenges to an order of

3    removal.  In Singh v. Gonzales, the Ninth Circuit held section 1254(a)(5) "is prominently directed

4    to judicial review of an order of removal" and section 1254(b)(9) only covers an "action taken or

5    proceeding brought to remove an alien…[and] applies '*only* with respect to review of an *order of*

6    *removal* under 8 U.S.C. § 1252(a)(1).'"  Singh v. Gonzales, 499 F.3d 969, 978 (9th Cir. 2007)

7    (emphasis in original, internal brackets omitted) (quoting INS v. St. Cyr, 533 U.S. 289, 313

8    (2001)).  As the Sied court properly recognized, the Ninth Circuit has directed that "[b]ased on

9    the statutory language, legislative history, and applicable precedent…Sections 1252(a)(5)'s and

10   (b)(9)'s 'jurisdiction-stripping provisions do[ ] not apply if the claim is *not a direct challenge to*

11   *an order of removal*.'"  Sied, at *11 (N.D. Cal. Mar. 2, 2018) (citing Singh v. Gonzales, 499 F.3d

12   969, 978 (9th Cir. 2007) (emphasis in original, internal brackets and ellipsis omitted)

13   (quoting Puri v. Gonzales, 464 F.3d 1038, 1041 (9th Cir. 2006) and citing other cases and

14   legislative history)).  Here, Petitioner is not raising a direct challenge to an order of removal.  If

15   granted, Mr. Chaudhry's removal order would not be vacated, rather, he will be given an

16   opportunity to have his motion to reopen heard before the BIA.  For this reason, because

17   Chaudhry's petition does not challenge his removal order, but instead seeks only to give

18   Chaudhry his "day in court", sections 1252(a)(5) and (b)(9) do not apply.

19           Section 1252(d)(1) provides, "[a] court may review a final order of removal only

20   if—the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C.

21   § 1252(d)(1).  The language of section 1252(d)(1) makes clear that it is limited to review of a

22   "final order of removal".  Id.  As discussed above, Mr. Chaudhry is not requesting a review of his

23   underlying removal order.  Accordingly, section 1254(d)(1) does not apply.

24           The administrative process and judicial review limitations established by sections

25   1252(a)(4), (a)(5), (b)(9), and (d)(1) are not applicable to this case.  These sections apply only to

26   challenges to the merits of an immigration claim—direct challenges to the denial of CAT relief

27   and final orders of removal—not to collateral due process claims.  Therefore, sections 1252(a)(4),

28   (a)(5), (b)(9), and (d)(1) are inapplicable to this case at  this time and have no effect on this

Court's pending exercise of subject matter jurisdiction.[6]

### D.    Suspension Clause

If this Court were to interpret sections 1252(a)(4), (a)(5), (b)(9), (d)(1), and (g) as Respondent argues it should—divesting this Court of jurisdiction—such application would violate the Suspension Clause of the United States Constitution.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. "The Supreme Court has held that 'because of that Clause, some judicial intervention in deportation cases is unquestionably required by the Constitution.'" Singh v. Mukasey, 533 F.3d 1103, 1106 (9th Cir. 2008) (internal brackets omitted) (quoting INS v. St. Cyr, 533 U.S. 289, 300 (2001)). Congress may eliminate the writ of habeas corpus without violating the Suspension Clause if it provides a "collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention". Singh v. Mukasey, 533 F.3d at 1106 (internal quotations omitted).

Respondent first argues the Suspension Clause does not apply to Petitioner because he has failed to bring a cognizable habeas claim, as he does not seek "the traditional…release from custody." ECF No. 7. This argument is unpersuasive. As the District of Massachusetts recognized in Devitri v. Cronen, "the Supreme Court itself has pointed out that the writ was historically used in a wide variety of circumstances, ranging from requests for freedom from the restraints of apprenticeship to challenging the refusal to let an immigrant leave a ship and land on shore. Devitri v. Cronen, 289 F. Supp. 3d 287, n.9 (D. Mass. 2018) (Citing I.N.S. v. St. Cyr, 533 U.S. 289, 301–03, 305–06, (2001) and Saint Fort v. Ashcroft, 329 F.3d 191, 197 (1st Cir. 2003) ("The writ of habeas corpus has been employed by non-citizens for centuries

---

[6] If Respondent had argued sections 1252(a)(4), (a)(5), (b)(9), and (d)(1) divested this Court of jurisdiction, the result and analysis would be the same. These sections apply to direct challenges related to CAT relief and final orders of removal. Thus, they only deprive a district court of jurisdiction in the case of a direct challenge to the denial of CAT relief or a direct challenge to an order of removal i.e. a direct challenge to a denial of asylum, withholding of removal, etc. See Sied v. Nielsen, No. 17-CV-06785-LB, 2018 WL 1142202, at *11-22 (N.D. Cal. Mar. 2, 2018), appeal dismissed, No. 18-16128, 2018 WL 6624692 (9th Cir. Sept. 14, 2018).

in both the United States and Britain."). Because habeas relief can take more forms than the traditional "release from custody", this Court finds the Suspension Clause applicable here.

Respondent then argues even if the Suspension Clause applies, which this Court finds it does, there are adequate and effective collateral remedies. Respondent contends the motion to reopen, petition for review process outlined in Section 1252 "provide Petitioner with an adequate procedural avenue to raise his ostensible habeas claims because both the immigration courts and the Ninth Circuit have the 'means to correct errors' that may have occurred or have since developed in Petitioner's case and 'authority to assess the sufficiency of the Government's evidence.'" ECF No. 7 at 12-13 (quoting Boumediene v. Bush, 553 U.S. 723, 786 (2008)).

This too is unpersuasive. Here, it cannot be said Petitioner has an adequate or effective way to raise his collateral claim. When the BIA denied Mr. Chaudhry's motion to stay removal without ruling on his motion to reopen, the BIA placed Mr. Chaudhry in a due process limbo, leading ultimately to an ongoing due process violation. Mr. Chaudhry cannot appeal the denial of his motion to stay removal. Mr. Chaudhry is currently in hiding at a hotel in Karachi, Pakistan, surviving on money sent from is family in the United States. He is unable to meaningfully pursue his motion to reopen. ECF No. 11. Petitioner is currently suffering an ongoing unconstitutional deprivation of his statutory right to move to reopen without due process of law. So, the question becomes: what is the adequate and effective remedy provided for by section 1252 to combat this due process violation? This Court can find none and Respondent can point to none. Respondent is unable to identify a single provision in section 1254 or anywhere else that can adequately remedy this due process violation. Mr. Chaudhry has fallen into a statutory hole and section 1252 provides no adequate or effective remedy to pull him out.

Further, without the ability to file a petition for a writ of habeas corpus, the government could deprive a petitioner meaningful opportunity to file a motion to reopen by simply deporting them before their motion to reopen is heard. This possibility of manipulation unquestionably renders the motion to reopen process inadequate. See Luna v. Holder, 637 F.3d 85, 98-99 (2d Cir. 2011). For the reasons discussed above, if this Court was deprived of jurisdiction by section 1252 (g) or any other section, such a deprivation would violate the

14

1  Suspension Clause of the U.S. Constitution.

2

3      **II. Mootness**

4          Respondent argues Petitioner's April 23, 2019, removal mooted the habeas

5  petition because Petitioner is no longer "in custody".  Petitioner argues the habeas petition is not

6  moot because Petitioner is suffering from collateral consequences as a result of his deportation.

7  The parties' positions are summarized, in general, below.

8                  **A.      Summary of the Parties Arguments**

9                          **1.      Respondent's Argument**

10         Respondent argues the petition for a writ of habeas corpus under 28 U.S.C. § 2241

11 became moot once Petitioner was released from immigration custody.  ECF No. 7 at 3.  Because

12 Petitioner has been removed, Respondent asserts he is no longer in immigration detention, such

13 that he cannot satisfy the "in custody" requirement for habeas relief.  Further, Respondent argues

14 the collateral consequences doctrine does not apply when the relief sought in the petition cannot

15 cure the alleged collateral consequences.

16         Respondent relies primarily on <u>Abdala v. INS</u>, 488 F3d 1061 (9th Cir. 2007) to

17 support this position.  Respondent asserts under <u>Abdala</u> where the "grounds for habeas relief will

18 not redress collateral consequences, a habeas petition does not continue to present a live

19 controversy once the petitioner is released from custody." <u>Id.</u>  In <u>Abdala</u> the Court stated where a

20 petitioner only requested a stay of deportation, his habeas petition was rendered moot upon his

21 deportation. <u>Id.</u> at 1064.  Respondent further relies on <u>Hose v. I.N.S.</u>, 180 F.3d 992 (9th Cir.

22 1999) for the proposition that a habeas petition seeking a stay of removal becomes moot upon

23 petitioner's deportation.

24                          **2.      Petitioner's Argument**

25         Contrary to Respondent, Petitioner contends the case or controversy requirement

26 remains satisfied despite Petitioner's deportation.  Petitioner cites <u>Zegarra-Gomez v. I.N.S.</u>, 314

27 F.3d 1124, 1127 (9th Cir. 2003) which held the case or controversy requirement remains satisfied

28 where the petitioner is deported, so long as he was in custody when the habeas petition was filed

and continues to suffer actual collateral consequences from his removal. Specifically, in Zegarra-Gomez the court found "[s]ince the administrative determination that petitioner was an aggravated felon renders him ineligible to seek cancellation of removal for twenty years, *see* 8 U.S.C. § 1182(a)(9)(A)(ii), the record before the district court was sufficient to demonstrate that collateral consequences arising from Zegarra–Gomez's deportation could sustain the continuation of his habeas petition." Petitioner also cites Ferreira v. Ashcroft, 382 F.3d 1045, 1049 (9th Cir. 2004) (holding a petitioner's challenge to the characterization of his conviction as an aggravated felony was not mooted by his deportation because Petitioner faced a lifetime bar to admission) in support of their position.

Petitioner asserts the following related collateral consequence: his inability to reasonably pursue his motion to reopen with the Board and a statutory bar preventing him from reentering the United States for a period of ten years. Petitioner contends the collateral consequences are a direct result of deportation. Petitioner further argues, these collateral consequences continue to burden his liberty as he is unable to properly pursue his motion to reopen and faces the possibility the motion to reopen will be denied based solely on his deportation. Therefore, Petitioner argues there are sufficient collateral consequences to sustain a live case or controversy.

Further, Petitioner challenges Respondent's application of Abdala. Petitioner asserts a favorable decision from this Court would, in fact, redress the collateral consequences. Petitioner argues the relief sought in his habeas petition—a reasonable opportunity to be heard on his motion to reopen—would remedy both collateral consequences. Specifically, Petitioner contends resolution of the petition in his favor would provide him the opportunity to pursue his motion to reopen with the board. Petitioner states if he were to prevail on the merits of his habeas petition the Court could order ICE to parole him to the United States under 8 U.S.C. § 212(d)(5) or order the United States to "take whatever steps are necessary to enable Petitioner to re-enter the United States for the limited purpose of reacquiring that status, with respect to his motion to reopen with the Board, that he enjoyed when he was removed from the United States." ECF No. 13 at 8.

**B.**    **Legal Framework**

**1.**        **"In Custody" Requirement**

3        It is well established the "in custody" requirement of a habeas petition is

4    determined at the time the habeas petition is filed.  <u>Spencer v. Kemna</u>, 523 U.S. 1, 7

5    (1998); <u>Carafas v. LaVallee</u>, 391 U.S. 234, 237–38 (1968).  This rule applies to petitioners who

6    have been deported after the filing of their habeas petition.  <u>Zegarra-Gomez v. I.N.S.</u>, 314 F.3d

7    1124 (9th Cir. 2003); <u>Abdala v. I.N.S.</u>, 488 F.3d 1061, 1063-64 (9th Cir.2007).  In other words, a

8    petitioner's deportation does not automatically render their petition moot so long as the petition

9    was filed prior to deportation.  <u>Id.</u>  This rule has been adopted not only by the Ninth Circuit, <u>Id.</u>,

10    but also by the Fourth Circuit, <u>Morales v. Sessions</u>, 736 Fed. Appx. 383, n. 1 (4th Cir. 2018),

11    Sixth Circuit, <u>Zundel v. Berrong</u>, 106 Fed. Appx. 331, 334-336 (6th Cir. 2004), Fifth Circuit,

12    <u>Zalawadia v. Ashcroft</u>, 371 F.3d 292, 297 (5th Cir. 2004), Second Circuit, <u>Swaby v. Ashcroft</u>,

13    357 F.3d 156, 159-61 (2d Cir. 2004), Tenth Circuit, <u>Mendoza v. Jeffers</u>, 62 Fed. Appx. 866, 867-

14    68 (10th Cir. 2003), First Circuit, <u>Leitao v. Reno</u>, 311 F.3d 453, 455-56 (1st Cir. 2002), and Third

15    Circuit, <u>Chong v. District Director</u>, I.N.S., 264 F.3d 378, 385 (3d Cir. 2001).

16        For a deported petitioner to satisfy the "in custody" requirement, the petitioner

17    must not only establish they were in custody at the time the habeas petition was filed, as outlined

18    above, but also that they continue to suffer actual collateral consequences of their removal.

19    <u>Zegarra-Gomez,</u> 314 F.3d at 1127.  In <u>Zegarra-Gomez</u> the Ninth Circuit held "the administrative

20    determination that petitioner was an aggravated felon render[ing] him ineligible to seek

21    cancellation of removal for twenty years...[is] sufficient to demonstrate that collateral

22    consequences arising from Zegarra-Gomez's deportation [exist to] sustain the continuation of his

23    habeas petition." <u>Id.</u>  <u>Zegarra-Gomez</u> establishes that a statutory bar to reentry for a term of years,

24    resulting from a petitioner's deportation, is a per se collateral consequence sufficient to sustain a

25    habeas petition. This holding, however, is in tension with a subsequent Ninth Circuit case—

26    <u>Abdala v. I.N.S</u>.

27        In <u>Abdala v. I.N.S.</u> the Ninth Circuit seems to attempt to narrow the holding of

28    <u>Zegarra-Gomez</u>, stating "[f]or a habeas petition to continue to present a live controversy after the

petitioner's release or deportation…there must be some remaining 'collateral consequence' that may be redressed by success on the petition." Abdala, 488 F.3d at 1063-64. Abdala, thus, ties the collateral consequence to the relief sought in the petition—requiring the grounds for habeas relief to redress the collateral consequences. This requirement is completely absent from the court's reasoning in Zegarra-Gomez, which focused exclusively on the "obvious consequence arising from [petitioner]'s *deportation*, i.e., the inability to seek to return to the United States for twenty years." Zegarra-Gomez, 314 F.3d at 1127.[7]

///

---

[7] The two cases cited in Zegarra-Gomez, Chong v. I.N.S., 264 F.3d 378 (3d Cir. 2001) and Smith v. Ashcroft, 295 F.3d 425 (4th Cir. 2002) are illustrative.

In Chong v. I.N.S. the Third Circuit held "the Board's order of removal creates sufficient collateral consequences to render Chong's petition a live case or controversy by preventing her from entering the United States for ten years." Chong, 264 F.3d at 385. In Chong, the habeas petition challenged the denial of withholding of removal on due process grounds without challenging her aggravated felony finding. A favorable ruling on the relief sought in the petition—withholding of removal—would not remedy the collateral consequence because the unchallenged aggravated felony would still prevent Chong from reentering the country. The court further noted even if she had challenged the aggravated felony finding it would be too late to withhold removal since Chong was already deported. Id. at 385-86. Despite these facts, the court still found a live case or controversy. Thus, the Court found the petition still presented a live case or controversy even though success on the habeas petition would not necessarily cure the collateral consequences.

In Smith v. Ashcroft the Fourth Circuit determined Smith was in custody at the time the petition was filed and "though Smith is no longer in the United States, he is unmistakably affected by the legal implications of our decision." Smith, 295 F.3d at 428. The court goes on to note if Smith prevails "there is a *possibility* he can beneficially unravel his untoward immigration status." Id. (emphasis added). The court relied solely on the existence of collateral consequences and only notes the *possibility* that success on the petition *could* lead to a "beneficial unraveling" of petitioner's immigration status. Thus, the court found a live case or controversy even though success on the habeas petition would not necessarily cure the collateral consequences.

In Zagara-Gomez itself, the relief sought in the petition did not remedy the collateral consequences identified by the Ninth Circuit—the 20-year bar to reentry. When the petition was eventually granted, the action was remanded to the Executive Office of Immigration Review to allow petitioner to apply for discretionary relief under section 212(c) of the INA. Juan Pablo Zegarra-Gomez v. John Ashcroft, et al., No. 00-7845-LGB-JWJ, Order adopting report and recommendation at 1 (C.D. Cal. Nov. 24, 2004). There is no indication this remand, which only allowed petitioner to *apply* for discretionary relief, redressed the 20-year bar to reentry.

18

This Court makes no determination whether <u>Zegarra-Gomez</u> or <u>Abdala</u> is the appropriate standard to apply. Further, this Court does not seek to add to the growing number of cases attempting to harmonize the two cases.[8] Instead, this Court applies the standard announced in <u>Adbala</u> because the <u>Abdala</u> rule subsumes that of <u>Zegarra-Gomez</u>. This means if Petitioner is successful under <u>Abdala</u> he is necessarily successful under <u>Zegarra-Gomez</u>.

### 2. <u>Abdala</u> Standard: Relief Sought Must Redress Collateral Consequences

In <u>Abdala</u> the Ninth Circuit reaffirmed that deportation from the United States after filing a habeas petition does not necessarily moot the petition. <u>Abdala v. I.N.S.</u>, 488 F.3d 1061, 1063-64 (9th Cir.2007). The court further reaffirmed "[f]or a habeas petition to continue to present a live controversy after the petitioner's release or deportation…there must be some remaining 'collateral consequence'…" <u>Id.</u> The court then, added a requirement that the collateral consequences "be redressed by success on the petition", essentially modifying the standard outlined in <u>Zegarra-Gomez</u>. <u>Id.</u> The court held, "where the grounds for habeas relief will not redress collateral consequences, a habeas petition does not continue to present a live controversy once the petitioner is released from custody." <u>Id.</u> at 1064. The court provided several examples:

> … a petitioner subject to the collateral consequences of a ten-year bar to reentry did not present a cognizable claim where the petitioner was also permanently barred from reentry on a wholly separate ground. *See Perez v. Greiner,* 296 F.3d 123, 125–26 (2d Cir.2002). In addition, where a petitioner only requested a stay of deportation, his habeas petition was rendered moot upon his deportation. *See, e.g., Hose v. INS,* 180 F.3d 992, 995 (9th Cir.1999) (en banc); *Jean v. Gonzales,* 452 F.3d 392, 395 (5th Cir.2006); *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1338 (11th Cir.2001) (per curiam). Likewise, a petitioner's release from detention under an order of supervision "moot[ed] his challenge to the legality of his extended detention." *Riley v. INS,* 310 F.3d 1253, 1256–57 (10th Cir.2002); *see also \*1065 Sayyah v.*

---

[8] In an attempt to harmonize the two cases, some district courts have distinguished <u>Abdala</u> from <u>Zegarra-Gomez</u> by limiting <u>Abdala</u>'s application to habeas petitions challenging only the length of detention. <u>See</u> <u>Hoang Trinh v. Homan</u>, 333 F.Supp.3d 984, 990-91 (C.D. Cal 2018). Other district courts have adopted the general, more expansive view of <u>Abdala</u>, requiring the grounds for habeas relief redress the collateral consequences in cases other than those challenging the length of detention. <u>See</u> <u>Paz v. California</u>, 16-0003-GW-SS, 16-0112-GW-SS, 2019 WL 1581418, at \*3 (N.D. Cal. 2019).

1    *Farquharson,* 382 F.3d 20, 22 n. 1 (1st Cir.2004) (holding that a
2    "claim[of] indefinite detention ... was mooted by [a petitioner's]
     subsequent release").

3    *Abdala,* 488 F.3d at 1064–65.

4    The <u>Abdala</u> court reasoned, in these situations the claims raised in the habeas petitions were

5    "fully resolved by release from custody" and thus successful resolution of the petition could not

6    provide the requested relief. <u>Id.</u> at 1065.

7    In applying this legal framework to Mr. Abdala, the court concluded because

8    Abdala's petition challenged only the length of his detention, not the order of removal itself, his

9    petition was moot.[9]  The Ninth Circuit concluded, there were no collateral consequences that

10   success on the petition could redress, because the relief sought—namely release from custody—

11   was achieved through deportation. <u>Abdala</u>, 488 F.3d at 1065.

12   **C.      Analysis**

13   As discussed at length above, in order for a deported alien's habeas petition to

14   present a live case or controversy, the alien must (1) have filed the habeas petition when they

15   were in custody and (2) suffer continuing collateral consequences as a result of the deportation (3)

16   that are redressable by the relief sought in the habeas petition. <u>Abdala v. I.N.S.</u>, 488 F.3d 1061,

17   1063-64 (9th Cir. 2007).

18   **1.      Chaudhry was in custody at the time he filed his habeas
              petition.**

19

20   There is no dispute Petitioner was in custody at the time he filed his petition for a

21   writ of habeas corpus. See ECF No. 1 at 7 ("[o]n February 14, 2019, Petitioner was arrested by

22   ICE. He was transferred to Yuba County Detention Center where he awaits imminent removal to

23   Pakistan."); ECF No. 3 at 3 ("[o]n February 14, 2019, Petitioner was arrested by ICE. He was

24

25   [9] Abdala's petition asserted he had been held beyond the statutorily prescribed period.  The only
     relief sought by Abdala was: (1) "release…from custody under the conditions of supervision set
26   out in 8 U.S.C. § 1231(a)(3), consistent with the United States Court of Appeals' holding in <u>Ma</u>
     <u>v. Reno</u>…" and (2) "the Court hold that his detention violates his rights to substantive and
27   procedural due process, and…the double jeopardy ex post facto clauses of the United States
     Constitution."  <u>Abdala v. I.N.S.</u>, No. 3:00 cv 01828-WQH-NLS (S.D. Cal) Petitioner's habeas
28   petition.

                                                    20

transferred to Yuba County Detention Center where he awaits imminent removal to Pakistan.");

ECF No. 14 at 3 (recognizing "Chaudhry was detained for the purpose of executing his final order

of removal."). Because it is undisputed Petitioner was in custody at the time he filed his habeas

petition, this Court finds this requirement is satisfied and turns to the analysis related to collateral

consequences.

### 2. Chaudhry is suffering collateral consequences from his deportation and a favorable ruling on his habeas petition would redress the collateral consequences

#### a. Continuing Collateral Consequences

Petitioner identifies the following collateral consequences resulting from his

deportation: his inability to reasonably pursue his motion to reopen with the BIA, and a statutory

bar preventing him from reentering the United States for a period of ten years. ECF No. 13 at 7.

Petitioner asserts these collateral consequences restrain his due process rights resulting in an

ongoing due process violation. Respondent notably does not contest the existence of these

collateral consequences and outside of their jurisdictional argument Respondent does not contest

the resulting due process implications. Respondent instead, argues the relief sought by Petitioner

in unable to remedy the collateral consequences due to Petitioner's deportation. As such, the

Court accepts the collateral consequences offered by Petitioner and agrees that such collateral

consequences exist as a result of Petitioner's deportation. The Court must now determine

whether the relief sought in the petition is capable of redressing these collateral consequences.

#### b. The relief sought in the petition redresses the collateral consequences

The Court must first identify the relief sought in the petition. Respondent argues

the court in Abdala distinguishes between two types of cases "those in which a live controversy

remains even after the petitioner is released from custody; and those in which the release from

custody addresses all of the claim in the habeas petition." ECF No. 9 at 2. Respondent asserts

Petitioner's case falls into the latter category because the relief sought—a stay of removal and

release from detention—were somehow "resolved when [Petitioner] was removed to Pakistan."

Id. Citing Abdala, Respondent argues, "where a petitioner only requests a stay of deportation, his

habeas petition [is] rendered moot upon his deportation" (citing <u>Hose v. I.N.S.</u>, 180 F.3d 992, 995 (9th Cir. 1999))[10] and "a petitioner's release from detention" moots a challenge to the legality of any extended detention.  <u>Id.</u>  Having reviewed the cases cited by Respondent, this Court finds these arguments unpersuasive.

Respondent's analysis of Petitioner's requested relief adopts an unduly restrictive view of the "relief sought", looking only to the procedural mechanism—a preliminary injunction granting a temporary stay of removal.  On this basis, Respondent argues because Petitioner has been deported, and a court cannot enjoin actions that have already occurred, the relief sought was resolved upon deportation.  Respondent's focus, however, is misplaced.  By looking only at the type of vessel used—preliminary injunction—Respondent erroneously limits the actual nature of the relief Petitioner is seeking.  As Petitioner states in his opposition to the pending motion to dismiss, "Petitioner filed the habeas corpus petition in this Court to enjoin the government from removing him to Pakistan *so that* he could have a reasonable opportunity to be heard on his motion to reopen."  ECF No. 8 at 4 (emphasis added).  This demonstrates the relief Petitioner was seeking and continues to seek, is not simply a stay of removal, but rather an opportunity to be heard on his motion to reopen.  The vessel chosen to achieve the ultimate relief sought is not, in this Court's view, conclusive when determining mootness in this context.  If Petitioner sought an

_____

[10] In their reply in support of the motion to dismiss, Respondent relies on <u>Hose v. I.N.S.</u> for the legal proposition that a petition seeking a motion to stay is mooted upon Petitioner's deportation.  ECF No. 9 at 3.  As Petitioner asserts in his supplemental briefing, there does not seem to be any support in <u>Hose</u> for this broad proposition.  In <u>Hose</u> the Ninth Circuit notes, if petitioner was "merely…seeking a stay rather than relief on the merits—the request for stay would be moot because [petitioner] has been deported."  <u>Hose</u>, 180 F.3d at 995.  However, that can hardly be said to stand for the broad proposition that in every habeas case involving a stay of removal, deportation renders the petition moot. This is especially true because the actual holding of <u>Hose</u> relates to the district court's jurisdiction under an old statutory immigration scheme not the mootness of a motion to stay.  It may be true, in many instances, a habeas petition seeking a stay of removal, especially in those cases seeking exclusively a stay of removal, becomes moot upon petitioner's deportation.  However, <u>Hose</u> does not establish this as a matter of law and this Court expresses no opinion on that matter.
This Court finds <u>Hose</u> to be unpersuasive and inapposite to the present case, where Petitioner seeks a stay of removal as a means to vindicate his due process rights by pursing a motion to reopen in with the BIA.  The ultimate relief sought in this case is not a stay of removal, but an opportunity to be heard on a motion to reopen.  Thus, even if this Court could find support for Respondent's broad proposition in <u>Hose</u>, such a broad proposition would not apply here.

affirmative injunction, a temporary restraining order, or any other procedural vessel, it would not change the actual relief Petitioner is seeking—a day in court to pursue his motion to reopen.

Having identified the actual character of the relief sought, the Court must now determine if such relief, if granted, would redress the enumerated collateral consequences— Petitioner's inability to reasonably pursue his motion to reopen with the BIA and a 10-year statutory bar to reentry.

It is clear that granting Petitioner the relief requested—relief allowing him a "reasonable opportunity" to be heard on his motion to reopen—would redress, in part the collateral consequences identified by Petitioner. For example, an order from this Court mandating Petitioner be returned to the United States for the purpose of pursuing a motion to reopen, would both grant petitioner the relief sought and redress the collateral consequence preventing Petitioner from meaningfully adjudicating his motion to reopen as it would place Petitioner back in the United States where he could meaningfully pursue his motion to reopen.

The Court does recognize that such an order would not directly redress the ten-year bar to reentry Petitioner is also suffering. As discussed at length above, unlike cases filed prior to the REAL ID Act, this Court lacks subject matter jurisdiction to address the merits of the final order of removal. As such, this Court has no power to vacate the BIA order of removal that triggered the ten-year bar to readmission. This, however, is not determinative. It is true, the relief sought in this case, a court order allowing Petitioner meaningful access to the BIA to vindicate his due process rights through his motion to reopen, would not itself remedy the ten-year bar to reentry. It would, however, give Petitioner access to the judicial body that could. In other words, the relief sought is a necessary bridge providing Petitioner access to the BIA—the body empowered to remove the ten-year bar to readmission. The relief sought in this case then, is necessary for petitioner to vindicate his due process rights and seek redress of the ten-year bar to readmission.

Absent a favorable ruling on the petition, Petitioner would be unable to meaningfully access the only entity capable of redressing the collateral consequence. Because Petitioner's ability to remedy the ten-year bar to readmission is dependent on a favorable ruling

1  by this Court, this Court finds the relief sought is necessary to redress the collateral consequences

2  and thus meets the <u>Abdala</u> standard.

3  **D.  Chaudhry's petition for a writ of habeas corpus is not moot**

4  Petitioner has satisfied the three elements required under Abdala to establish a live

5  habeas petition after deportation.  (1) Petitioner filed his petition for a writ of habeas corpus on

6  April 22, 2019, when he was in I.C.E. custody, (2) Petitioner was deported and suffers continuing

7  collateral consequences as a result of his deportation, and (3) the relief sought in his petition, if

8  granted, would redress the enumerated collateral consequences.

9  Petitioner's liberty continues to be restrained by collateral consequences

10  preventing him from meaningfully pursuing his motion to reopen.  Until Petitioner is able to

11  meaningfully pursue his motion to reopen, there remains unresolved collateral consequences and

12  Petitioner's due process rights are wrongfully restrained.  This continued deprivation of Plaintiff's

13  due process rights constitutes a live case or controversy redressable through his writ of habeas

14  corpus.  Therefore, this Court holds Chaudhry's habeas petition is not moot.

15  This conclusion is not only supported by applicable case law as discussed above,

16  but also flows from the purpose of the writ of habeas corpus—giving the court broad latitude to

17  "dispose of the matter as law and justice require."  238 U.S.C. § 2243.  Chief Justice Earl Warren

18  described the writ as "a procedural devise for subjecting executive, judicial, or private restraints

19  on liberty to judicial scrutiny…" <u>Peyton v. Rowe</u>, 391 U.S. 54, 58 (1968).  It is this "high

20  purpose" Chief Justice Warren stated, that "has made the writ both the symbol and guardian of

21  individual liberty."  <u>Id.</u>  Here, Petitioner seeks relief in habeas to prevent a now ongoing due

22  process violation, created by a hole in the immigration statutory scheme.

23  As discussed at length above, it is undisputed Petitioner has a statutory right to file

24  a motion to reopen for changed country conditions.  <u>Mata v. Lynch</u>, 135 S.Ct. 2150, 2153 (2015)

25  (citing 8 U.S.C. § 1229a(c)(7)(A).  It is also undisputed that a petitioner seeking to vindicate his

26  statutory right to file a motion to reopen based on changed country conditions, who's motion to

27  stay has been denied by the BIA, is unable to seek judicial review of the BIA's denial of their

28  motion to stay.  As such, that petitioner who has filed a motion to reopen based on changed

country conditions, can be deported without judicial scrutiny, while their motion to reopen remains pending with the BIA. The practical consequence of this is that the government can deprive a petitioner of any meaningful way of pursing their motion to reopen, by deporting them prior to adjudicating the motion to reopen. This glaring gap in the immigration statutory scheme deprives individuals of their due process rights and is the exact restraint on liberty the writ of habeas corpus was intended to combat.

Additionally, the Court is troubled by Respondent's position in this case. The present habeas petition does not challenge the decision of the BIA or attempt to abscond the immigration process. In fact, it is undisputed such a petition would be inappropriate for this court to consider. Petitioner only seeks access to the judicial system. Yet Respondent would have this Court and others similarly situated stand inert, allowing a gap in the immigration statutory scheme to deprive petitioners of their day in court. As Justice Fortas wrote and this Court emphasizes, "[t]here is no need in statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). This Court recognizes Petitioner may face strong opposition in pursuing his motion to reopen. Nonetheless, the writ of habeas protects his right to pursue it.

## IV. Conclusion

This Court has jurisdiction to hear Mr. Chaudhry's petition for a writ of habeas corpus and the petition for a writ of habeas corpus was not rendered moot by Mr. Chaudhry's deportation. Therefore, this Court recommends:

1.      Respondent's motion to dismiss be DENIED;

2.      Respondent be ordered to parole Petitioner back to the United States within 20 days of the date of this order;

//

//

3. Upon Petitioner's return, a preliminary injunction will issue enjoining the government from removing Mr. Chaudhry from the United States. This injunction and order will terminate in connection with any of the following events:

a. a final non-appealable decision vacating Mr. Chaudhry's removal order;

b. Mr. Chaudry's failure to (1) timely petition for review before the appropriate United States Court of Appeals a final adverse ruling from the BIA on his motion to reopen and (2) file a simultaneous motion to stay removal with the Court of Appeals;

C. A decision on a motion to stay removal by the Court of Appeals.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 6, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE